Leonard D. DuBoff (Admitted Pro Hac Vice)
The DuBoff Law Group, PC
6665 SW Hampton Street, Suite 200
Portland, OR 97223-8357
lduboff@dubofflaw.com
Oregon State Bar No. 774378
Telephone: (503) 968-8111
Facsimile: (503) 868-7228

Bert P. Krages II (Admitted Pro Hac Vice)
Attorney at Law
6665 SW Hampton Street, Suite 200
Portland, OR 97223-8357
bert@krages.com
Oregon State Bar No. 872798
Telephone: (503) 597-2525

Gregory P. Sitrick
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
gregory.sitrick@quarles.com
AZ #028756
Tel: (602) 229-5317
Fax: (602) 420-5198

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Frank, Inc., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>The Orb Factory Limited, a Canadian corporation,<br><br>Defendant. | Case No. 4:15-cv-00433-DCB<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Defendant The Orb Factory ("Orb Factory") moves for summary judgment against Plaintiff Lisa Frank, Inc. ("LFI") on its claims for trade dress infringement, unfair competition, and copyright infringement. The material facts underlying this motion are undisputed, so partial summary judgment on these claims is appropriate. FRCP 56;

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—1

1   *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).[1]

2   **I.  The Trade Dress and Unfair Competition Claims Should Be Dismissed.**

3       To recover for trade dress infringement under § 43 of the Lanham Act, a plaintiff must

4   prove by a preponderance of the evidence: (1) that its trade dress is distinctive; (2) that

5   the appropriated features of the trade dress are nonfunctional; and (3) that the defendant's

6   products create a likelihood of consumer confusion. *Kendall-Jackson Winery, Ltd. v. E. &*

7   *J. Gallo Winery*, 150 F.3d 1042, 1045 (9th Cir. 1998). To defeat summary judgment, LFI

8   must show a genuine issue of material fact as to each of these issues. Because the unfair

9   competition claim under state common law is based on the trade dress claim, this claim

10  fails if the trade dress claim fails. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.

11  1994).

12      LFI asserts that the packaging of seven PlushCraft products and five Sticky Mosaics

13  products infringe LFI's trade dress. First Amended Complaint at ¶ 27. The PlushCraft line

14  consists of decorative pillow kits consisting of a pillow having pre-punched holes on one

15  side and small, pre-cut pieces of colored fabric. Kay Decl. at ¶ 2. The kit is assembled by

16  using a stylus to push the centers of the fabric pieces into the holes, in accordance with a

17  legend that shows which color piece should be inserted in which hole. The Sticky

18  Mosaics line consists of mosaic kits in which self-adhesive foam tiles are placed on

19  spaces marked on an illustrated template in accordance with a color legend. Products

20  from both lines have won numerous industry awards. Kay Decl. at ¶ 2.

21      LFI licenses a broad range of goods including school supplies, stationery, backpacks,

22  crafts, cosmetics, clothing, shoes, jewelry, bedding, toys, fashion accessories, and

23  electronics. First Amended Complaint at ¶ 10; Lisa Frank Depo. at 35:8–14. SOF ¶

24  1.However, LFI does not license a pillow craft kit or a mosaic kit similar to the Orb

25  Factory products. Lisa Frank Depo. at 109:22–110:12; 112:16–22. SOF ¶ 2.

27      [1] The Court issued an order on October 17, 2016 granting Defendant leave to file a
28  summary judgment motion, including the supporting memorandum, not to exceed 30
    pages.

1    ***A.  LFI's purported trade dress is not protectable because it is generic.***

2        In its responses to interrogatories, LFI identified Lisa Frank as one of two persons

3    who are competent to describe the specific characteristics of LFI's trade dress and explain

4    how those characteristics have been incorporated into Orb Factory's products.[2] Exhibit 1

5    (Plaintiff's Response to Interrogatory No. 1 of First Set of Interrogatories). LFI has been

6    unable to define the elements of its trade dress with any degree of specificity or

7    consistency. In fact, in response to Defendant's concerted and sustained efforts to obtain a

8    coherent description of LFI's trade dress, LFI has offered at least four different

9    descriptions of what constitutes its trade dress.

10       In its answers to interrogatories, LFI describes its trade dress as:

11                                    **[Trade Dress 1]**

12   - LFI's combination of colors includes colors across the visible spectrum and the use of
     bold colors across the spectrum and a graduated color-fade with knock-out graphics
13   and other artwork.[3] The animal characters that constitute in whole or in part LFI's
     trade dress are pandas, unicorns, penguins, bears, frogs, kittens, cats, golden
14   retrievers, tiger cubs, leopard cubs, snow leopard cubs, rabbits, dolphins, horses,
     orcas, polar bears, puffins, butterflies, hummingbirds, fawns, Dalmatians, swans, and
15   a husky puppy.

16   Exhibit 1 (Plaintiff's Responses to Interrogatory Nos. 4 & 5 of Defendant's First Set of

17   Interrogatories)(paraphrased). SOF ¶ 3.

18       In her deposition, Lisa Frank offered three more descriptions of LFI's trade dress.

19   First, she testified that LFI's trade dress consists of:

20                                    **[Trade Dress 2]**

21   - Bright colors, full of rainbows, lots of hot pink, inanimate and animate objects, always

22   _____

23       [2] The other person was Laura Crawford, In her deposition, Lisa Frank identified David
     Evered as the person most competent to describe LFI's trade dress. However, he refused
24   to answer questions regarding LFI's trade dress during his 30(b)(6) deposition. Lisa Frank
     Depo at 29:7–30:4; Evered 30(b)(6) Depo. at 11:16–12:21.
25

26       [3] Knock-out printing is the process of removing one color of ink from below another
     to create a clearer image. Inks are translucent, so printing different colors of inks over one
27   another will alter the appearance of the colors. For example, printing yellow ink over blue
     ink will create a green tinge because the inks mix. Knock-out printing is generally the
28   default means of printing artwork and packaging throughout the world. Kay Decl. at ¶ 4.

1
2
rainbow, "doing things that aren't in the real world," hearts, rainbows, butterflies, unicorns, flowers, pink cats, purple dogs, owls, stars, music notes, rainbow clouds, dolphins, penguins, and shooting stars.

3
Lisa Frank Depo. at 30:17–33:3 (paraphrased).

4
She later testified to another definition consisting of:

5
**[Trade Dress 3]**

6
7
8
● Every LFI product contains a rainbow combination of pink, orange, yellow, green, blue, and purple (pink is used in the LFI rainbows instead of red); iconic things such as hearts, stars, flowers, and butterflies and all those things that are used or tattooed on an animal.

9
Lisa Frank Depo. at 126:23–129:10; 154:16–155:10 (paraphrased). SOF ¶ 3.

10
Lisa Frank also testified that LFI's trade dress consists of the description recited in

11
paragraphs 17 and 18 of the Complaint, which, when distilled to its essence, consists of:

12
**[Trade Dress 4]**

13
14
15
16
● (1) brightly colored bold graphics of distinctive animal characters, with rainbow colored features, large eyes, and happy, friendly expressions; (2) use of brilliant colors, graduated color sequences, and rainbow colors that fade into one another; and (3) package, cover, and product surface designs featuring, in addition to the distinctive animal characters, combinations of rainbows, flowers, ice cream cones, butterflies, birds, rabbits, fish, cupcakes, bubbles, peace symbols, random words, hearts, happy faces, and stars.

17
Lisa Frank Depo. at 133:63–135:22 (paraphrased). SOF ¶ 3.

18
LFI's various definitions resort to the kind of "empty generalities" that are too broad,

19
abstract, and generic to constitute a trade dress. *Walker & Zanger, Inc. v. Paragon*

20
*Industries, Inc.*, 549 F.Supp.2d 1168, 1176 (N.D. Cal. 2007). A plaintiff seeking to

21
protect its unregistered trade dress must do more than simply allude to the overall look of

22
its trade dress. It must articulate the specific elements that comprise its distinctive trade

23
dress. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014)(it is the

24
plaintiff's duty to articulate the specific elements that constitute its trade dress);

25
*Landscape Forms, Inc. v. Columbia Cascade Co*., 113 F.3d 373, 381 (2d Cir. 1997). *See*

26
*also*, 1 McCarthy, *Trademarks and Unfair Competition* § 8:3. Absent a precise expression

27
of the elements and scope of the claimed trade dress, it is impossible to evaluate the

28
distinctiveness of the design elements in the relevant market. Furthermore, a plaintiff's

1   inability to explain exactly which aspects of its purported trade dress merit protection

2   indicates that its claim "is pitched at an improper level of generality," *i.e.*, the claimed

3   trade dress is generic. *Landscape Forms, Inc.*, 113 F.3d at 381.

4       With respect to LFI's definitions, Lisa Frank testified that even she is unable to

5   determine the boundary between a color that is bright and one that is not. Lisa Frank

6   Depo. at 140:24–141:13. SOF ¶ 4. She likewise testified that the difference between a

7   brilliant color and a non-brilliant color is subjective. Lisa Frank Depo. at 147:18–148:1.

8   SOF ¶ 4. In addition, LFI has depicted hundreds of different characters and objects in its

9   art work.[4]

10      In addition, widespread use within an industry is evidence that the elements are

11  generic. *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007). Claiming

12  features such as "colors across the visible spectrum," "other artwork," and "inanimate and

13  animate objects" is extremely overbroad because such terms essentially cover anything

14  that can be illustrated. Similarly, claiming features such "bold colors," "bright colors,"

15  "brilliant colors," "iconic things," and "intense extraordinary color combinations"

16  intrudes on the public domain and fails to provide adequate notice to competitors

17  regarding the boundaries of what LFI claims to be its exclusive right. *Id*. Although Lisa

18  Frank was extremely evasive during her deposition, she personally testified that bright

19  colors are popular with children and are commonly used in children's products. Lisa

20  Frank Depo. at 121:14–24. SOF ¶ 5. She also acknowledged that toy companies such as

21

22      [4] Animal characters in LFI artwork have included pandas, unicorns, penguins, bears,
        frogs, kittens, cats, golden retrievers, Dalmatians, huskies, mixed breed dogs, tiger cubs,
23      leopard cubs, snow leopard cubs, rabbits, dolphins, horses, orcas, polar bears, puffins,
        brown bears, sea gulls, teddy bears, butterflies, sea horses, star fish, owls, hummingbirds,
24      other kinds of birds, fawns, fish, and swans. Objects in LFI artwork have included
        rainbows, flowers, ice cream cones, ice cream sundaes, scissors, castles, hand bags,
25      cupcakes, peace symbols, planets, candy, jelly fish, candles, hot dogs, hamburgers,
26      donuts, tacos, French fries, pizza slices, soft drinks, candy machines, coral, random
        words, hearts, happy faces, shooting stars, stars, bubbles, trees, pools, and snow. Human
27      or humanoid characters have included rock singers, surfer girls, princesses, fairies, and
28      aliens.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—5

1  Disney, Mattel, and Hasbro use bright colors in their products and packaging. *Id*. at

2  51:23--52:8, 209:5–6. When asked about the use of animal characters by companies that

3  market children's products, she conceded that "tons of companies" use them. *Id.* at

4  146:22. SOF ¶ 6.

5      It is black-letter law that a manufacturer cannot claim all shades of a color, much less

6  all colors, to constitute its trade dress. *International Jensen, Inc. v. Metrosound U.S.A.,*

7  *Inc.*, 4 F.3d 819, 824 (9th Cir. 1993); *Al-Site Corp. v. VSI Intern.,* Inc., 174 F.3d 1308,

8  1328 (Fed. Cir. 1999)("Absent a specifically defined, color-definite, and stable visual

9  appearance, an alleged trade dress cannot receive protection."). Likewise, trade dress is

10 not distinctive when it is composed of elements that are widely used in the same product

11 fields. *Kendall-Jackson Winery, Ltd.*, 150 F.3d at 1049 (longtime use of elements by other

12 competitors renders them generic); *Hansen Beverage Co. v. National Beverage Corp*.,

13 493 F.3d 1074, 1079 (9th Cir. 2007)(widely employed elements are unlikely to lead to

14 confusion as to source), *vacated on other grounds*, 499 F.3d 923 (9th Cir. 2007).

15     Allowing protection of LFI's purported trade dress would also run afoul of the

16 requirement that trade dress be sufficiently defined to provide notice of its boundaries to

17 competitors.  LFI's purported trade dress, which encompasses the entire spectrum of

18 colors, at least 25 animal characters, and at least 13 inanimate objects, is not distinctive.

19 Given the extreme overbreadth and the lack of discernible boundaries of LFI's purported

20 trade dress, the trade dress and unfair competition claims should be dismissed.

21     **B. LFI's trade dress claim lacks merit because it fails the consistent overall look**

22         **standard.**

23     A party claiming trade dress protection for a line of products must first demonstrate

24 that the line has a recognizable and consistent overall look. *Am General Corp. v.*

25 *Daimlerchrysler Corporation*, 311 F.3d 796, 814–15 (7th Cir. 2002). In such cases, the

26 plaintiff faces a particularly difficult challenge because it must show that the overall

27 appearance of the several products is sufficiently distinct and unique to merit protection.

28 *Yankee Candle Co v. Bridgewater Candle Co*, 259 F.3d 25, 42 (1st Cir. 2001).

1      LFI has failed to clearly state the products or packaging for which it is seeking trade

2   dress protection and has likewise failed to show that it has used its purported trade dress

3   in a consistent manner.[5] In its response to Defendant's Request for Production No. 14

4   ("Sufficient documents to establish the scope of what LFI considers to be its trade

5   dress"), LFI produced 25 pages of "Trade Dress Exemplar Products." Exhibit 2. This

6   exhibit shows that LFI products do not have a uniform consistent look. SOF ¶ 7. Even

7   LFI products from the same product line do not have a consistent overall look. For

8   example, the LFI color and activity books share no common elements other than the

9   prominent placement of LFI's oval-shaped logo in the upper left-hand corner of their

10  covers. Exhibit 3. SOF ¶ 8.

11     Furthermore, when trade dress protection is sought for a line of products, courts need

12  to give due attention to protecting competition. *Rose Art Industries Inc. v. Swanson*, 235

13  F.3d 165, 172 (3rd Cir. 2000); *Landscape Forms*, 113 F.3d at 380; *Regal Jewelry Co. v.*

14  *Kingsbridge Int'l, Inc.*, 999 F. Supp. 477, 486 (S.D.N.Y. 1998)("[C]ourts consider . . .

15  broader product line claims with an 'acute' concern for protecting competition given that

16  any remedy could potentially cover a wide range of products."). LFI's products show such

17  a diversity of appearances that it is impossible for competitors to discern what constitutes

18  LFI's purported trade dress. Prohibiting toy companies from using "bright colors,"

19  "animal characters," and "inanimate objects" would obviously have a serious adverse

20  effect on competition. Because LFI has used combinations of colors, animal characters,

21  and inanimate objects in highly diverse and nonrepetitive ways, there is nothing

22  sufficiently definite that can be protected. Therefore, the trade dress and unfair

23  competition claims should be dismissed.

24  **C.  The elements of LFI's purported trade dress are functional in the context of**

25  **children's products.**

26     LFI has the burden of proving that its alleged trade dress is not functional. *Rachel v.*

27

28      [5] The First Amended Complaint fails to show an actual LFI product, although it shows
some LFI artwork.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—7

1   *Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 1987). The core inquiry into

2   whether trade dress is functional requires examination of the effects that granting

3   protection to a product will have on the ability of others to compete. *I.P. Lund Trading*

4   *ApS v. Kohler Co.*, 163 F.3d 27, 37 (1st Cir. 1998). The trade dress of a product is

5   functional under the aesthetic functionality test, if "protection of the [trade dress] as a

6   trademark would impose a significant non-reputation-related competitive disadvantage."

7   *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006).

8   Thus, trade dress is aesthetically functional when it serves an aesthetic purpose that is

9   wholly independent of any source-identifying function. *Id.* at 1072–74. In other words,

10  where the consumer is driven to purchase the product based on how it looks, then that

11  look is aesthetically functional.

12      A color cannot be protected as trade dress if there is a competitive need to use that

13  color in the industry. *First Brands Corp.,* 809 F.2d at 1382–83. LFI's purported trade

14  dress is thus unprotectable in view of the fact that toy companies need to use bright colors

15  and animal characters to market products because these features serve the function of

16  appealing to children. Kay Decl. at ¶ 4. SOF ¶ 9.As shown in Exhibit 4, the packaging of

17  LFI's products is not distinctive from that of a variety of other manufacturers in the use of

18  bright colors or animal characters. SOF ¶ 10. Thus, if LFI were the only entity allowed to

19  have exclusive use of bright colors and animal characters, this would have a severe

20  adverse effect on the ability of competitors to market children's products. Therefore, the

21  trade dress and unfair competition claims should be dismissed on this basis.

22  ***D.  LFI cannot establish that likelihood of confusion is probable.***

23      Likelihood of confusion exists when consumers viewing the product or its packaging

24  would probably assume that it is associated with the source of a different product having

25  a similar trade dress. *Au-Tomotive Gold, Inc.*, 457 F.3d at 1075–76. A finding of

26  likelihood of confusion requires that confusion be probable, not just a possibility. *Murray*

27  *v. Cable Nat. Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir.1996). The eight factors to be

28  considered in determining likelihood of confusion are set forth in *AMF Inc. v. Sleekcraft*

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—8

*Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)(the "*Sleekcraft*" factors). When this topic was covered during the 30(b)(6) deposition, LFI's designated deponent testified that the sole basis for the claim that a likelihood of confusion exists is the similarity between Plaintiff's products and Defendant's products (*i.e.*, the third *Sleekcraft* factor). Evered 30(b)(6) Depo. at 15:11–16:5. Nonetheless, all eight factors are discussed below.

### *(1)   Strength of the Mark*

LFI's inability to coherently describe what makes its purported trade dress distinctive shows that it has put the cart before the horse. In other words, to prove that it has a trade dress, LFI must show more than the fact that LFI products have bright colors and animal characters; it must show that the average purchaser of toys would believe that all toys containing bright colors and animal characters originate from LFI. *American General Corp.*, 311 F.3d at 815–16. Given that LFI's descriptions of its trade dress are both inconsistent and expressed in conclusory terms that are incapable of objective evaluation, the purported trade dress is at best inherently weak. It should be further noted that LFI has never filed an application with the U.S. Patent and Trademark Office to register its trade dress, despite the fact that it has filed over 600 applications to register trademarks. Exhibit 19 (Plaintiff's Response to Request for Admissions No. 3). Finally, in addition to LFI's failure to present a prepared deponent to testify on this issue at the 30(b)(6) deposition, it has failed to designate an expert witness to testify on this topic. In summary, LFI has failed to show anything that would suggest strength to any cognizable degree.

### *(2)   Proximity of the Goods*

Orb Factory is strictly a toy company. Although some LFI goods have a tangential degree of proximity, the PlushCraft and Sticky Mosaics product lines encompass a very narrow range of products. Kay Decl. at ¶ 6. SOF ¶ 11. With respect to whether the two companies are competitors, the best that LFI can argue is that its very broad range of products includes some forms of crafts such as coloring books, stickers, and bracelets. The companies are definitely not direct competitors in the fields of pillow or mosaic kits. SOF ¶ 12. Thus, this factor favors Orb Factory.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—9

1    *(3)*    ***Similarity of the Marks***

2    LFI's lack of a consistent and specifically-defined trade dress makes it difficult to

3    assess similarity, especially in light of the enormous variability in the packaging of LFI's

4    products. A review of the "Trade Dress Exemplar Products" produced by LFI in

5    discovery calls into question whether a substantial number of LFI products even use

6    colors that are particularly bright or brilliant. Exhibit 2. Furthermore, the LFI products

7    share no common elements except that each has the LFI logo, generally in the upper left-

8    hand corner. The LFI logo consists of an oval shape with a white outline around the

9    perimeter and "Lisa Frank" spelled in psychedelic letters that have color fades, white

10   outlines, and an embossed effect. Exhibit 7. SOF ¶ 13. Lisa Frank testified that each LFI

11   product prominently bears the LFI logo and that neither consumers nor licensees have

12   ever complained that the logo was too small to be seen. Lisa Frank 30(b)(6) Depo. at

13   61:20–62:13. SOF 14.

14   The packaging for the Orb Factory products uses designs that are cleaner and

15   generally less cluttered than the LFI designs. Exhibits 5 & 6. Each package accurately

16   depicts the product contained within the package and has insets that suggest the manner in

17   which the craft is assembled. The Lisa Frank packaging does not take this approach.

18   The packaging for the PlushCraft products was changed in 2014 from that shown in

19   paragraph 27 of the First Amended Complaint, but remains reasonably similar to the

20   packaging shown therein. Exhibit 5; Kay Decl. at ¶ 7. The former and current packaging

21   are characterized by a photograph of the pillow product placed in a setting such as a floor,

22   table, or window sill; an inset showing the stylus being used to insert a fabric swatch into

23   the pillow; and irregular bands of a single color at the top and bottom of the front of the

24   box. SOF ¶ 15. The PlushCraft logo consists of a solid purple five-lobed irregular shape

25   with a cyan border and has the word PlushCraft spelled in orange, cyan, and yellow-green

26   letters. SOF ¶ 16.This logo is prominently placed on the package and is distinct from the

27   LFI logo. SOF ¶ 17. In fact, Lisa Frank testified that LFI uses nothing similar to the

28   PlushCraft logo, which she characterized as "very prominent" on the box and "pretty

1   ugly." Lisa Frank 30(b)(6) Depo. at 108:18–25.

2       The packaging for each Sticky Mosaics product is characterized by the prominent and

3   accurate depiction of one of the templates in the kit with smaller accurate depictions of

4   the remaining templates off to the side. Exhibit 6. SOF ¶ 18. The packaging prominently

5   displays the Sticky Mosaics logo which consists of "STICKY MOSAICS" spelled out in

6   white letters on colored squares that are reminiscent of the tiles used in the kits, and

7   which are arranged together to form an overall rectangular shape. SOF ¶ 19. The

8   backgrounds of the packages consist of either a single monochromatic scheme or a

9   combination of two monochromatic schemes in pastel colors.

10       The logos used by the companies are significantly different. Exhibit 7. SOF ¶ 20. In

11   this regard, it should be noted that the presence and prominence of distinctive logos

12   negates any possibility of a likelihood of confusion. *Nora Beverages Inc. v. Perrier*

13   *Group of Am.*, 269 F.3d 114, 123 (2nd Cir. 2000); *Bristol-Myers Squibb Co. v.*

14   *McNeil-P.P.C., In*c., 973 F.2d 1033, 1047 (2d Cir. 1992).

15       Besides the logos, there are obvious differences between the respective products.

16   First, Orb Factory does not use animal characters on its packaging to indicate the source

17   of origin of the product but rather to show prospective purchasers what the product looks

18   like. SOF ¶ 21. Second, Orb Factory does not use "rainbow fades" which is an element

19   described or implied in three of LFI's trade dress definitions. SOF ¶ 22. Orb Factory

20   likewise does not use "Lisa Frank pink," which is a proprietary printing process. Kay

21   Decl at ¶ 8; Krages Decl. at ¶ 2. SOF ¶ 23. In general, Lisa Frank packaging is very busy,

22   meaning it has a multitude of extraneous elements. In contrast, the Orb Factory packaging

23   tends to be substantially less cluttered. Exhibits 2, 3, 4, and 5. SOF ¶ 24. Furthermore, the

24   Orb Factory packaging tends to use pastel colors whereas the LFI packaging uses

25   predominantly saturated colors.

26       **(4)   *Evidence of Actual Confusion***

27       David Evered, during the 30(b)(6) deposition, testified that LFI has no evidence of

28   actual confusion. Evered 30(b)(6) Depo. at 36:12–14. SOF ¶ 25. Although Plaintiff took

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—11

the position during the 30(b)(6) deposition of Lisa Frank that she would not answer

questions about consumer confusion, Lisa Frank 30(b)(6) Depo. at 18:22–19:10, she did

state that she could not say that consumers would confuse Orb Factory's PlushCraft and

Sticky Mosaic products with LFI products. Lisa Frank 30(b)(6) Depo at 109:8–17;

127:9–14.[6] It is established Ninth Circuit law that if there is a very large volume of sales,

but only a few isolated instances of actual confusion, the amount of actual confusion is

not substantial and may be discounted. *Kendall-Jackson Winery, Ltd.*, 150 F.3d at 1052.

Considering the fact that LFI has enjoyed significant commercial success over the last 37

years, First Amended Complaint at ¶ 10, and the Sticky Mosaics products have been on

the market since 2004, LFI's failure to produce evidence that a single consumer has

confused the Orb Factory products with LFI products weighs in favor of Orb Factory.

### *(5)     Marketing Channels Used*

LFI and Orb Factory products are sold in some of the same stores such as Michael's

and Toys-R-Us, as well by online retailers such as Amazon. Lisa Frank Depo. at

117:2–12; Laura Binder Depo. at 80:21–83:1. SOF ¶ 26. Lisa Frank testified that the only

time she had seen LFI and Orb Factory products side-by-side was at a Hobby Lobby store

that carried the Orb Factory pillow products and an LFI coloring kit licensed to Kappa

Books. Lisa Frank 30(b)(6) Depo. at 28:4–29:2. Laura Binder testified that she once saw

LFI stickers and coloring books at a Michael's but that they were in a different

department than the Orb Factory products. Laura Binder Depo. at 81:21–82:9. On the

whole, it can be said that the marketing channels are similar.

### *(6)     Type of Goods and the Degree of Care Likely to Be Exercised by the Purchaser*

LFI does not license goods that are similar to the PlushCraft pillows or the Sticky

Mosaics kits. Although the goods are relatively inexpensive and arguably the customers

---

[6] Lisa Frank testified that she received telephone calls from three licensees stating that Orb Factory had characters that looked like Lisa Frank characters. They apparently did not say that the trade dress was similar. Lisa Frank Depo. at 106:5–107:2.

1    are not particularly sophisticated, the fact that the products are so different means that

2    customers are unlikely to buy a PlushCraft pillow or a Sticky Mosaics kit under the

3    impression that they are buying a (nonexistent) LFI pillow or mosaic kit.

4         *(7)    Defendant's Intent in Selecting the Mark*

5         Orb Factory did not design its products or packaging with the intent to make them

6    appear similar to LFI products. Kay Decl. at ¶ 9. SOF ¶ 27. The sole reason that Orb

7    Factory manufactures products that depict animal characters and inanimate objects such

8    as cats, dolphins, unicorns, hearts, and cupcakes is that such characters and objects are

9    loved by children and not because LFI or any other company depicts them. It should be

10   noted that Orb Factory makes other PlushCraft and Sticky Mosaics products that depict

11   characters and objects that LFI does not depict. Examples include dinosaurs, robots, lions,

12   elephants, ballerinas, pirates, and mermaids. In fact, LFI does not even make pillow or

13   mosaic kits that are similar to the Orb Factory products and therefore nothing analogous

14   exists that could have been copied.

15        *(8)    Likelihood of Expansion of the Product Lines*

16        Lisa Frank testified that LFI has no plans to license to companies who manufacture

17   mosaic or pillow kits. Lisa Frank Depo. at 112:22–113:22. SOF ¶ 28. Furthermore, LFI

18   could not lawfully expand into the market for Orb Factory's pillow product because Orb

19   Factory holds a patent on the process of making the pillow. Kay Decl. at ¶ 6.

20        The *Sleekcraft* factors are not to be applied rotely, and some factors are more

21   important than others depending on the nature of the case. *One Industries, LLC v. Jim

22   O'Neal Distributing*, 578 F.3d 1154, 1162 (9th Cir. 2009). However, the similarity of the

23   marks and whether the two companies are direct competitors are always important. *Id*. In

24   the present matter, the LFI products incorporate no consistent design elements other than

25   the LFI logo. Conversely, the PlushCraft and Sticky Mosaics packaging have definable

26   design elements other than the logos, and the primary purpose of the packaging is to

27   accurately depict the product contained within the packages. Thus the third factor favors

28   Orb Factory.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—13

1    Two other factors that strongly favor Orb Factory are the "strength" and "intent"

2 factors. The inability of LFI to articulate a definite description of its trade dress, despite

3 numerous opportunities to do so, goes to the issue of strength of its trade dress.

4 Furthermore, Lisa Frank not only acknowledges that bright colors and animal characters

5 are commonly used in children's products, she was likewise unable to describe the

6 boundary between colors that are bright and colors that are not bright. Similarly, the

7 evidence shows that Orb Factory had no intent to copy LFI's "trade dress."

8    With the possible exception of the marketing channels for the products, the remaining

9 factors either favor Orb Factory or are neutral. However, even the factor concerning

10 marketing channels is not strong. Lisa Frank could testify to only a single instance in

11 which she saw a Orb Factory product and an LFI product next to each other in a store.

12 Taken as a whole, the application of the *SleekCraft* factors shows that it is not probable

13 that consumers will confuse the products of the two companies. Therefore the trade dress

14 and unfair competition claims should be dismissed.

15 **II. The Copyright Claims Should Be Dismissed Because the Works Are Not**

16     **Substantially Similar.**

17    LFI is asserting that four of Orb Factory's Sticky Mosaics products infringe the

18 copyrights of five of LFI's artworks. Each of the Orb Factory products at issue depicts an

19 animal of some sort. The flaw in the copyright claims is that LFI confuses the concept of

20 the protection of ideas with the concept of protection of expression. Copyright law does

21 not protect ideas but only the specific expressions of ideas. *E.g.*, *Feist Publ'ns, Inc. v.*

22 *Rural Tel. Serv. Co.*, 499 U.S. 340, 34–50, (1991)(copyright law assures authors the right

23 to their original expression, but encourages others to build freely upon the ideas and

24 information conveyed by a work). LFI seems to think it has the right to prevent other

25 artists from creating works that depict unicorns with a rainbow, tiger cubs in jungles,

26 dolphins swimming and jumping out of water, and dogs wearing tiaras and necklaces. It

27 does not have such a right. *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,

28 803 F.3d 1032, 1037 (9th Cir. 2015).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—14

1    In order to prove copyright infringement, a plaintiff must demonstrate (1) ownership

2    of a valid copyright and (2) copying of the elements of the work that are original. *Funky*

3    *Films v. Time Warner Entertainment Co.*, 462 F.3d 1072. 1076 (9th Cir. 2006). Absent

4    evidence of direct copying, the plaintiff must show that the defendant had access to the

5    plaintiff's work and that the works are substantially similar. *Id*. The substantial-similarity

6    test contains an extrinsic and intrinsic component. In the pretrial part of a case, courts

7    may apply only the extrinsic test, which is objective in nature and focuses on the

8    articulable similarities between the protectable elements of the two works. *Id*. at 1077. A

9    plaintiff who fails to satisfy the extrinsic test cannot survive a motion for summary

10   judgment. *Benay v. Warner Bros. Entm't Inc.*, 607 F.3d 620, 624 (9th Cir. 2010).

11   The Ninth Circuit has a long line of cases setting forth the principle that the ideas that

12   underlie visual works are not protectable by copyright. These cases have held, for

13   instance, that anyone is free to create a work that utilizes the idea of a doll with

14   exaggerated human features, jellyfish sculptures in glass shrouds, graphical user

15   interfaces that have icons, photographs of a vodka bottle, masks that depict the man in the

16   moon, stuffed dinosaur toys, and reproductions of jungle animals. *Mattel, Inc. v. MGA*

17   *Entm't, Inc.*, 616 F.3d 904, 913–17 (9th Cir. 2010); *Satava v. Lowry*, 323 F.3d 805 (9th

18   Cir. 2003); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1073 (9th Cir.2000) *Apple*

19   *Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir.1994); *Pasillas v.*

20   *McDonald's Corp.*, 927 F.2d 440 (9th Cir. 1991); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898,

21   901 (9th Cir.1987); *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir.

22   1987).[7] Thus, no copyright protection is afforded to the elements of expression that

23

24   [7] This principle is well established in other jurisdictions as well. *E.g.*, *Yankee Candle Co v. Bridgewater Candle Co.*, 259 F.3d 25, 34–39 (1st Cir. 2001)(labels on candles);

25   *Mattel, Inc. v. Azrak-Hamway Intern., Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)(muscular dolls in fighting pose); *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F.Supp.2d

26   688, 701–12 (E.D. La. 2013)(bead dogs); *Erickson v. Blake*, 839 F. Supp.2d 1132, 1138

27   (D. Or. 2012)(transcription of $\pi$ to music); *Aurora World, Inc. v. TY Inc.*, 719 F.Supp.2d

28   1115, 1137–38 (C.D. Cal. 2009)(stuffed toys); *Sportsmans Warehouse, Inc. v. Fair*, 576 F.Supp.2d 1175 (D. Colo. 2008)(sculptures of elk); *Alchemy II, Inc. v. Yes! Entertainment*

naturally follow from the idea of depicting things that exist in nature. *Satava*, 323 F.3d at 810–11; *Aliotti*, 831 F.2d at 901; *Herbert Rosenthal Jewelry Corp.*, 446 F.2d at 741 (others are free to utilize the idea of depicting a bee in jewelry so long as they do not plagiarize its expression). Likewise, there is no copyright protection to the elements of a work that are either indispensable or customary in the treatment of a given subject matter. *Satava,* 323 F.3d at 811.

The Ninth Circuit has defined three steps to follow in applying the extrinsic test:

(1)     The plaintiff must identify the source of the alleged similarity between its work and the defendant's work.

(2)     Using analytic dissection, the court must determine whether any of the allegedly similar features are protected by copyright, ensuring that the unprotectable ideas are separated from potentially protectable expression;

(3)     Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright—that is, decide whether the work is entitled to broad or thin protection, and depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

*Apple Computer, Inc.*, 35 F.3d at 1443.

Expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law. *Satava v. Lowry*, 323 F.3d at 810. Thus, elements that constitute such expressions must be dissected from the work when applying

---

*Corp.*, 844 F.Supp. 560, 568–69 (C.D. Cal. 1994)(talking teddy bears); *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F.Supp.2d 525 (S.D.N.Y. 2000)(diamond rings with ballerina style base); *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F.Supp.2d 226 (S.D.N.Y., 2000)(baby shoe pendants); *Designer's View, Inc. v. Publix Super Markets, Inc.*, 764 F. Supp. 1473 (S.D. Fla., 1991)(panels depicting fruits, vegetables, and baked goods); *Van Rijn v. California Raisin Advisory Bd.*, 697 F.Supp. 1136 (E.D. Cal. 1987)(humanized raisin figures); *Streeter v. Rolfe,* 491 F.Supp. 416 (W.D. La. 1980)(turkey decoys).

1    the extrinsic test. In the present case, the respective works by the parties encompass the

2    naturally-occurring features of animals. In addition, no artist may use copyright law to

3    prevent others from depicting ideas that are expressed by nature. *Id*. at 813 (such ideas

4    "are the common heritage of humankind"). Therefore, LFI's copyrights are very thin. *Id*.

5    at 812. When the extrinsic test is applied to the works at issue, it becomes apparent that

6    they are not substantially similar.

7        **A.  LFI's unicorn work is not substantially similar to the Sticky Mosaics Rainbow**

8            **Magic work.**

9        Plaintiff asserts that the package for the Sticky Mosaics Rainbow Magic product

10   infringes its illustration of a unicorn. First Amended Complaint at ¶ 58. The LFI work

11   depicts a slight-framed unicorn standing on top of a purple rock in front of a pond with

12   pink-flowered shrubs, a plethora of animals, and a rainbow in the background. Exhibit 8.

13   SOF ¶ 29. The Rainbow Magic box depicts a stout unicorn standing in front of a rainbow

14   against an otherwise sparse background.[8] Exhibit 6 at page 1. SOF ¶ 31. Both unicorns

15   are standing with their right forefeet raised, but the LFI unicorn has its weight on its

16   haunches whereas the Sticky Mosaics unicorn has its weight equally distributed fore and

17   aft. It is common to depict horses and unicorns with one forefoot in the air, because it

18   makes the work more visually interesting. Kay Decl. at ¶ 11. Unicorns are commonly

19   depicted in fantasy settings and depicting unicorns with rainbows is nothing extraordinary

20   in the art world. *Id*. SOF ¶ 31.

21       Examples of depictions based on the idea of a unicorn and rainbow include a work by

22   K. Chin that has been widely circulated in print form since 1980. Exhibit 9. Although the

23   unicorn in the K. Chin work shares elements seen in the LFI unicorn, *i.e.*, it has a light

24   muscular frame, long separated strands in the mane and tail, and a long spiral horn that is

25   _____

26   [8] The unicorn in the Rainbow Magic kit is based on a sketch of a horse that was drawn
     by Vanessa Wilson, an employee of Orb Factory. The sketch was drawn from scratch and
27   later modified into a unicorn. Wilson Decl. at ¶ 7. True and accurate copies of the original
     sketch and the modified sketch are attached to the Wilson declaration as Exhibits 101 and
28   102.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—17

1   making a sweeping motion that leaves a rainbow and stars in its trail, Lisa Frank testified

2   that the two unicorns were not similar. Lisa Frank Depo. at 164:12–166:9. She also stated

3   that the K. Chin work did not infringe the LFI work. *Id*. at 165:11–13 ("Not at all").

4   Similarly, Ms. Frank testified that another depiction of a unicorn with a colored tail,

5   colored mane, colored horn, and raised forefoot, standing in front of a rainbow, was not at

6   all similar to the LFI unicorn. Exhibit 10. Lisa Frank Depo. at 195:23–196:13 ("Not at

7   all."). Later in her deposition, when presented with other works depicting horses or

8   unicorns in front of rainbows, Lisa Frank ceased to have opinions. Exhibits 11, 12 & 13;

9   Lisa Frank Depo. at 231:1–15; 241:7–242:23; 246:2–6.

10      Although the LFI and Orb Factory works share the idea of a unicorn standing in front

11  of a rainbow with a raised forefoot, the two works are expressed in highly dissimilar

12  ways. When the various elements common to unicorn works are examined, it is obvious

13  that they are either indispensable or customary in the treatment of the subject of a unicorn,

14  and even then, those elements are not substantially similar. SOF ¶ 32.

| Element | LFI Unicorn Work | Orb Factory Unicorn Work |
|---|---|---|
| Rainbow | Six-color rainbow (pink, orange, light yellow, green, blue, purple) with each arc of color having an embossed effect and a lighter "highlight" band set within the arc. | Five-color rainbow (red, orange, dark yellow, green, and blue) with solid flat bands of color with squares for placement of tiles within the bands. |
| Horn | Long spiral horn colored in a progression of the rainbow spectrum. The horn is making a sweeping motion which leaves a trail of stars in its wake. | Short conical horn colored in yellow and studded with three jewels. The horn is stationary. |
| Mane | Consists of long narrow strands scattered in multiple directions colored in red, orange, yellow, green, blue, magenta and purple. Part of the mane is braided and tied with a bow | Consists of broad longitudinal bands of gold, magenta, pink, and orange and studded with jewels. |
| Tail | Long narrow strands scattered in multiple directions colored in red, orange, yellow, green, blue, magenta, and purple. | Broad bands of gold, magenta, pink, and orange. Substantially longer and fuller than the tail of the LFI unicorn. |

| | | |
|---|---|---|
| Head | Long elegant head with horn set behind the ears, large proportion relative to size of torso. | Short squat head with horn set substantially forward of the ears, small relative to size of torso. |
| Torso | Muscular light-framed torso with sloping topline tapering from shoulders to haunch. | Undefined box-like torso with horizontal topline. |
| Legs | Muscular, narrow, and tapered, with well-defined joints and acute articulation. | Post-like shapes with no muscular definition and shallow articulation. |
| Gaze | Head is pointed steeply downwards with eyes directed at viewer. | Head is more horizontal with eyes looking directly behind the unicorn. |
| Haunch | Sloped diagonally downward and covered with patches of purple, magenta, blue, and yellow. | Composed with a curve having a long horizontal portion and a long vertical portion, with a magenta star and jewel. |
| Shoulder | Defined musculature and partially covered with patches of purple, orange, green, and yellow. | Undefined and without coloration. |
| Hooves | Horse-like and rainbow-colored in sequence of blue, yellow, orange, and red. | Crude, elephant-like, and colored with pink band with magenta circles. |
| Eyes | Smaller dark eyes with black irises. | Larger, human-like eyes with white sclera and blue irises. |
| Muzzle | Long refined muzzle with nostrils and mouth. | Short coarse muzzle without nostrils or mouth. |
| Ears | Single ear visible with vertical orientation and pointed towards viewer, inside shaded in purple and magenta. | Both ears visible and oriented diagonally and pointed rearwards. Inside shaded in magenta and pink. |
| Setting | Complex setting with detailed renditions of flowers, a deer, an owl, a pond with lilies, and a mountain, behind which emanate sunbeams that illuminate a pink and yellow sky with a rainbow, clouds, butterflies, and a bird. | Simple abstract setting. |

When the elements common to the works are examined using the extrinsic test, the differences demonstrate that the works are not substantially similar and that the Orb Factory work is not a copy of the LFI work. As stated by the Ninth Circuit: "The key question always is: Are the works substantially similar beyond the fact that they depict the same idea?" *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010). In this

1    case, the answer is no.

2    **B.  LFI's tiger cub work is not substantially similar to the Sticky Mosaics Jungle**

3    **Adventure work.**

4    Plaintiff asserts that the package for the Sticky Mosaics Jungle Adventure product is

5    infringing its illustration of a tiger cub. First Amended Complaint at ¶ 72.[9] Both works

6    depict a tiger cub having black stripes, rounded ears, green eyes, white chest, and erect

7    tail. Exhibit 14 & Exhibit 6 at page 2. However, tigers in nature have black stripes, white

8    chests, and rounded ears with black borders that surround white areas. They can also carry

9    their tails erect. Although tigers in nature generally have yellow irises, they are commonly

10   depicted in artwork having green irises. SOF ¶ 33. Examples include Kellogg's Tony the

11   Tiger mascot and works by K. Chin and Leroy Neiman. Kay Decl. at ¶ 12. SOF ¶ 34. The

12   K. Chin tiger cub work shares other common elements with the LFI work, including the

13   magenta and purple shading in the ears. Exhibit 15. Nonetheless, Lisa Frank testified that

14   the K. Chin work is not substantially similar to the LFI work. Lisa Frank Depo. at

15   172:6–12 ("Absolutely not.").[10] The Leroy Neiman tiger shares these same qualities.

16   Exhibit 16. Ms. Frank likewise testified that this work was not similar to the LFI work. *Id*.

17   at 174:23–175:5.

18   As is the case with the unicorn illustration, the similarities between the LFI work and

19   the Orb Factory work are limited to features that are common to tigers or commonly used

20   in the media to depict tigers. In some respects, the similarities are fewer because the LFI

21   

22   [9] The Sticky Mosaics tiger cub was also created by Vanessa Wilson. Wilson Decl. at ¶

23   8. The primary reference that she used was an item of clip art, which is attached to her

     declaration as Exhibit 103. She consulted this reference to give her a general idea of the

24   proportions of a tiger cub and then she made an original sketch. Exhibit 104. Among the

25   original elements are the pose of the tail, the shape of the mouth, nose, eyes, head, ears,

     and chest; the placement and shape of the stripes; the highlights in the eyes, and the

26   proportions of the head, chest, and legs.

27   [10] During the deposition, Plaintiff's attorney represented to the deponent that the K.

28   Chin tiger cub work was created in 2012. In reality, the work was created in 1973. The

     artist died in 1995. Kay Decl. at ¶ 13.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—20

illustration depicts a tiger cub that is standing, whereas the Orb Factory package depicts a tiger cub that is sitting. When the common elements are examined, it is obvious that they are of the kind that are indispensable or customary in the treatment of the subject of a tiger cub, and even then they are not substantially similar. SOF ¶ 35.

| Element | LFI Tiger Cub | Orb Factory Tiger Cub |
|---|---|---|
| Posture | Tiger cub is standing with its topline in a horizontal position. | Tiger cub is sitting with its topline in a steeply sloping position. |
| Coloration | Head is mostly light orange and light yellow, body is mostly magenta, and leg is mostly purple. | Head is mostly dark orange and dark muted yellow, body is dark muted yellow with dark orange and brown tiles. |
| Tail | The tail has a black tip and is held in vertical position. The rear portion is heavily shaded in magenta and purple. | The tail has a white tip and is held in diagonal position. The rear portion has no shading. |
| Ears | The ears are rimmed in black with a narrow white border surrounding a purple interior. | The ears are rimmed in black with a broad pink border surrounding a magenta interior. |
| Eyes | A single white highlight located completely within the pupils | There are two white highlights located at the extreme edges of pupils. |
| Gaze | The head is oriented away from viewer but eyes are looking at viewer. | The head is facing viewer but eyes are looking away from viewer. |
| Head | The head is longer than wide and has a peaked skull. | The head is wider than long and has a rounded skull. |
| Chest | The chest is white with black stripes, and is shaded with purple at top and pink at bottom. | The chest is white without stripes, and is shaded in blue tiles at top with silver and white jewels covering the balance. |
| Stripes | The stripes are mostly horizontal on the head, and are more abundant and complex on the torso, legs, and head. | The stripes are mostly vertical on head, and are sparser and less complex in other areas. |
| Negative Space | The space between the tail and body is wide at the bottom and narrows upwardly to an open space between ear and tail. | The space between the tail and body is narrow at bottom and widens upwardly to point where ear touches tail. |
| Nose | The nose has wineglass shape with dark purple top and black rim at bottom and matches the color of the lips. | The nose is almost heart-shaped with the top half rendered in magenta and bottom half in purple. It does not match the yellow lips. |

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—21

| | | |
|---|---|---|
| Muzzle | The muzzle is orange and covered with black freckles and has whiskers. | The muzzle is yellow has spaces for white tiles and no freckles or whiskers. |
| Setting | The tiger cub is set in a very complex and cluttered setting that has detailed renditions of flowers, multicolored ferns, various species of birds, a butterfly, a frog, and a pond with lilies. The sky has a graduated rainbow fade from yellow to orange to pink to purple to blue. | Simple abstract depiction of foliage in shades of purple against a blue background. |

The two works differ substantially in all the elements, which demonstrates that the tiger cub work was not copied. When the unprotected elements are filtered out, there is no substantial similarity between the works.

### C. LFI's dolphin works are not substantially similar to the Sticky Mosaics Dolphins work.

For their third and fourth copyright claims, LFI asserts that the Sticky Mosaics Dolphins product is infringing the Dancing Dolphins and Surfing Dolphins illustrations. First Amended Complaint at ¶¶ 86 & 100. The Dancing Dolphins illustration shows a pair of dolphins that are underwater and in stylized poses that form the shape of a heart. Exhibit 17. SOF ¶ 36. The Orb Factory work does not depict a similar combination of poses. The Surfing Dolphins illustration depicts four dolphins jumping out of a wave that is depicted with a graduated fade from blue to green that blends into the sky which in turn fades from yellow to orange. Exhibit 18. SOF ¶ 37. Three of the dolphins are playing with a beach ball.

The Orb Factory package prominently depicts a single dolphin jumping out of a bubbly sea that is colored in shades of blue. Exhibit 6 at page 3. SOF ¶ 38. The package also shows three other templates that show two dolphins swimming upwards, two dolphins jumping out of the water, and a dolphin swimming with a sea turtle. None of the templates depict dolphins with beach balls or fish.

It should be noted that there are about forty species of dolphins, and thus a fair amount of variation exists in nature. Nonetheless, the dolphins in the Sticky Mosaics work bear a

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—22

strong resemblance in proportions to the Common Bottlenose Dolphin, specifically with regard to the proportion of the beak to the head. Kay Decl. at ¶ 14. SOF ¶ 39. The stripes are reminiscent of the stripes of the Atlantic White-sided Dolphin, which are common around Halifax, Nova Scotia where Orb factory is based. Kay Decl. at ¶ 14. SOF ¶ 39. The Sticky Mosaics dolphins have pectoral fins that are set forward of the dorsal fin, as is the case for all species of dolphins. In contrast, the dorsal fins of the LFI dolphins are located immediately above the pectoral fins, which does not exist in nature. SOF ¶ 40 The LFI dolphins also have more elongated beaks than the Orb Factory dolphins. SOF ¶ 41.

LFI acknowledges that dolphins can swim under water and jump out of water. Exhibit 19 (Plaintiff's Response to Request for Admissions No. 33). The external anatomy of dolphins is simpler than that of unicorns and tigers, and thus there is less variation in how to render them. Kay Decl. at ¶ 14. The practice of depicting dolphins in water environments dates back more than 3000 years, and LFI's dolphin works have no novel elements other than the specific coloration of the dolphins, the specific settings, and the implied shape of a heart in the Dancing Dolphins illustration. However, the Sticky Mosaics package does not share these elements. When asked to compare LFI's dolphin works to another dolphin work that shows interacting dolphins, a sky with colors graduating from pink to orange to yellow above an ocean with colors graduating from light to dark blue, as well as coral and fish, Lisa Frank testified that this work did not infringe either of LFI's works. Exhibit 20; Lisa Frank Depo at 178:15–179:8. Likewise, when asked to review another dolphin work showing dolphins leaping from a wave with a graduated sky and rainbow in the background, she testified that this work did not infringe the LFI dolphin works. Exhibit 21; Lisa Frank Depo. at 236:4–5. She had no opinion regarding whether another work infringed the LFI works. Exhibit 22; Lisa Frank Depo. at 250:23–251:11.

With regard to those aspects where artistic judgment is required, Plaintiff's and Defendant's illustrations are not substantially similar. The relevant elements include the following. SOF ¶ 41.

| Element | LFI Dolphins | Orb Factory Dolphins |
|---|---|---|
| Coloration | The dolphins have wavy bands in various graduated colors, without pearls. The Surfing Dolphins have a color progression from dark blue to light blue to green to pink to yellow. The Dancing Dolphins shows a pair of facing dolphins having a color progression of blue to purple to green to yellow in one dolphin which continues to the other dolphin in the form of yellow to pink to magenta, the overall effect of which is to create a rainbow progression of color. | The dolphins have parallel bands of abrupt generally-contrasting colors with rows of pearls. The stripes are reminiscent of the Atlantic White-sided Dolphin although rendered in various colors. One template shows two dolphins generally facing each other but without a rainbow progression of color. |
| Beaks | Longer than in Orb Factory's work. | Shorter than in LFI's works and similar to that of the Common Bottlenose Dolphin. |
| Mouths | Upper and low parts constructed with shallow c-shaped curves. | Upper and lower parts constructed with shallow s-shaped curves. |
| Dorsal and Pectoral Fins (Flippers) | The dorsal fins are set above the pectoral fins. The pectoral fins are set further back and narrower than in the Orb Factory work; the pectoral fins are either the same or a complementary color as the adjacent body color. | The dorsal fins are set behind the pectoral fins as is the case for real dolphins. The pectoral fins are further forward and wider than is the case for the LFI dolphins and their color contrasts with the adjacent body color. |
| Eyes | The eyes have black pupils surrounded by a blue or green iris. | Black pupils surrounded by white sclera. |
| Settings | The Dancing Dolphins work is set underwater with detailed renderings of fish, some of which are in a school forming the shape of a heart, a seahorse, various kinds of coral, bubbles (some of which are heart-shaped), and jellyfish. The surface of the water is backlighted by a sky radiating in concentric circles of yellow, orange, and pink. The water then has a graduated transition from magenta to purple to blue.<br><br>The Surfing Dolphins work shows a sky that has a graduated progression from dark orange to orange to yellow which in turn meets with the ocean that progresses from green to medium blue to dark blue. Other elements include a multicolored beach ball and an island with palm trees. | The dominant template is set above water against a pastel sky with crudely rendered birds and faint sunbeams. The three secondary templates have very simple backgrounds. |

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—24

1   When the unprotected elements are filtered out, there is no substantial similarity

2   between the works.

3       **D. LFI's dog work is not substantially similar to the Sticky Mosaics Playful Puppies**

4           **work.**

5       LFI's recently-added fifth claim of copyright infringement is perhaps the strongest

6   demonstration of its lack of understanding of what is protected by copyright. Although

7   LFI's pleading is not a model of clarity, LFI appears to be contending that an LFI work

8   that includes a black-and-white Boxer-like dog wearing a tiara and necklace is infringed

9   by the Orb Factory template showing a Papillon wearing a tiara and jeweled collar.

10  Exhibit 23 & Exhibit 6 at page 4; First Amended Complaint at ¶¶ 29 & 114.

11      The LFI work depicts a heavy-set dog with black-and-white coloring, wide skull,

12  broad muzzle, droopy pointed ears, and a pink tutu. SOF ¶ 43. The breed is not obvious

13  but it could possibly be a Boxer with uncropped ears. The Orb Factory Papillon template

14  is part of the Sticky Mosaics Playful Puppies product and depicts a Papillon with a black

15  head and white blaze. SOF ¶ 44. The dog has the standard features of a Papillon, which

16  include fine boned structure, a small head that is slightly rounded between the ears with a

17  well-defined stop, a refined muzzle that tapers to a small nose, erect ears with fringes,

18  brown eyes, and a long coat.[11] Kay Decl. at ¶ 15.

19      The dog in the LFI work is wearing a silver tiara covered in pink, orange, yellow,

20  green, blue, and purple stones and a silver necklace connected to the sides of a heart

21  covered with pink, orange, and blue stones. SOF ¶ 45. The Papillon is wearing a gold

22  tiara with pink stones and is also wearing a gold collar with gold-colored stones to which

23  _____

24      [11] The Sticky Mosaics template was designed by Vanessa Wilson and depicts a breed

25  of dogs known as the Papillon. Wilson Decl. at ¶ 9. The template is based on the two
    reference images which are attached to her declaration as Exhibits 105 and 106. The

26  sketch she made is attached as Exhibit 107. In addition to the foam tiles, the Playful
    Puppies kit uses sparkling jewel tiles and each of the templates contains a visual element

27  to which sparkling jewel tiles are intended to be affixed. Ms. Wilson decided to include a
    tiara and a pendant as the visual elements to which jewels would be affixed in the

28  Papillon template.

1   a pink heart is suspended. SOF ¶ 46. However, the concept of a dog wearing a tiara and

2   necklace is not novel. SOF ¶ 47. In fact, tiaras and necklaces made for dogs may be

3   purchased at specialty pet shops. Wilson Decl. at ¶ 9; Exhibits 24 & 25. Likewise, heart-

4   shaped identification tags similar to the heart-shaped pendant on the collar worn by the

5   Papillon are commonplace. Kay Decl. at ¶ 15; Exhibit 26.

6       When the elements common to dogs are examined, it is obvious that the two works are

7   not substantially similar. SOF 48.

8

| Element | LFI's Dog | Orb Factory's Dog |
|---|---|---|
| Posture | The LFI dog is perched on top of a large heart with forelegs dangling over the front of the heart. The dog is wearing a pink tutu. | The Papillon is sitting on the ground with a forefoot slightly raised. |
| Coloration | The head is mostly black with a white muzzle and blaze that stops just short of the forehead. The center part of the chest is white and part of one leg is white. | The head is black with a white blaze that extends from the white muzzle to the crest of the head. The entire chest and both legs are white. |
| Ears | The LFI dog has pointed ears that hang down to eye level. | The Papillon has erect rounded ears with fringes of long hair that give the breed its characteristic "butterfly" appearance. |
| Eyes | The eyes are large and almond shaped, with large pupils and prominent blue irises. | The eyes are more circular and smaller than those of the LFI dog, and have brown irises. |
| Gaze | The head is tilted slightly away from the viewer and the eyes are looking to the right and slightly downward. | The head is facing viewer and the eyes are directed at the viewer. |
| Head | The LFI dog has a very coarse head with a broad deep muzzle and jowls. | The Papillon has a narrow refined head and a small dainty muzzle. |
| Chest | The chest is broad with a short coat. | The chest is heavily fringed with long hair. |
| Nose | The nose is prominently set on the muzzle and has an almost rectangular shape. | The nose is very small and has an almost triangular shape. |
| Mouth | The mouth is constructed with two upward-facing curves and extends the entire width of the muzzle. The tongue is not visible. | The mouth is small and constructed of two downward-facing curves. it extends only halfway across the muzzle and the pink tongue is clearly visible. |

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—26

| | | | |
|---|---|---|---|
| Tiara | The tiara is silver and covered in pink, orange, yellow, green, blue and purple stones. The top ornament rises from the band in a generally triangular shape and is toped by a large green stone. | | The tiara is gold and with a band covered in small pink stones. The top ornament consists of a row of filigree with seven pink stones that is topped by another row of filigree that incorporates a heart shape with four pink stones. |
| Necklace/ Collar | The LFI dog is wearing a necklace consisting of a silver chain covered in pink, orange, yellow, and blue stones that is attached to the sides of a silver heart-shaped pendant covered in pink stones. | | The Papillon is wearing a gold collar with gold-colored pearls. Hanging from the collar is a pink heart-shaped pendant with a pink pearl in the center and a white border covered in white pearls. |
| Setting | The LFI dog is perched with two other dogs on top of a large rainbow-colored heart that sits over a checker pattern having a color fade from blue to purple to pink. The sky in the background has a fade from blue to purple to pink and numerous clouds. | | The Papillon is set against a solid blue background. |

LFI seems to think it has the right to prevent others from creating their own works that depict a black-and-white dog wearing a tiara. It apparently does not matter if that dog is a Boxer, Akita, Dalmatian, Boston Terrier, Great Dane, Border Collie, Cocker Spaniel, Greyhound, Bull Terrier, Chihuahua, or even a mixed breed. However, copyright law vests the public with the right to create their own works, which is what Orb Factory has done. The LFI and Orb Factory works are not substantially similar. Therefore, the copyright claims should be dismissed.

**Conclusion**

The trade dress and unfair competition claims should be dismissed because LFI has failed to articulate its trade dress with any degree of specificity, its purported trade dress does not have a consistent look, the use of bright colors and animal characters is functional in the context of toys, and it is not probable that consumers would be confused about the origins of the respective products.

Similarly, the copyright claims should be dismissed because the works at issue are not substantially similar but instead constitute different expressions of superficially-similar ideas.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—27

1    Dated: February 13, 2017

2    Respectfully Submitted,

3

4    s/Bert P. Krages II
     Attorney at Law
5    6665 SW Hampton Street, Suite 200
     Portland, OR 97223-8357
6    bert@krages.com
     Oregon State Bar No. 872798
7    Telephone: (503) 597-2525

8    Of Attorneys for Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT—28